HEARD APRIL TERM, 1878.

## HARRISON vs. MANUFACTURING COMPANY.

The entry in the judgment book is the judgment in the cause, and not necessarily the judgment roll; and a copy thereof is the transcript which may be filed in another County.

A certificate by the Clerk of the Court "that the foregoing is a correct transcript from the docket of judgments kept in my office," *held* to be sufficient to entitle the transcript to be considered as a judgment when filed in another County.

Motion to amend a judgment may be made as well upon the transcript filed in another County as upon the original judgment.

An order upon a summons to show cause declaring a judgment a lien on the real property of defendants makes the original judgment or transcript, as the case may be, valid and binding from the entry of such order.

BEFORE THOMSON, J., AT AIKEN, APRIL TERM, 1878.

This was a rule to show cause, issued in a case entitled W. H. Harrison, assignee of John M. Clark & Sons, against the Southern Porcelain Manufacturing Company.

The case is stated in a brief, of which the following is a copy:

This is a rule to show cause, issued by Judge Thomas Thomson at the April extra Term, 1878, of the Court of Common Pleas for Aiken County. The rule was based on the affidavit on behalf of the appellant showing that the Sheriff, the respondent, had received from sales of the real estate of the defendant company on sales day in December, A. D. 1877, and January, A. D. 1878, the sum of $1,647.28, which the appellant claimed should be applied in payment of the above judgment.

The return to the rule admitted the reception of the money, but stated that the Sheriff had been notified in writing by the attorneys of J. L. & H. W. Addison, who also held a judgment against the defendant company, that said money was applicable to said Addison judgment and not to the Harrison (appellant) judgment.

At the hearing, the appellant, Harrison, introduced the following evidence:

I. Transcript of judgment, of which the following is an exact copy:

Names of parties against whom judgments have been obtained— The Southern Porcelain Manufacturing Company. Attorney— J. P. Carroll.

Names of parties in whose favor judgments have been obtained— J. M. Clark & Sons. Attorney—J. L. Addison.

Damages and costs—Amount of judgment, $4,955.90. Interest from 1st March, 1871. Attorney's costs, $15.00. Clerk's costs, $5.87½. Sheriff's, $3.50. Cost on appeal Supreme Court—Attorney's costs, $160.00. Clerk's Circuit Court, $10.00. Administering 4 oaths, $2.00. Clerk Supreme Court, $4.50. Printing argument for Supreme Court, $5.00. J. Jones, for recording, $4.50. Sheriff Richardson, 40 cents. Total amount costs and disbursements, $210.77½.

Filed on the                    day of                    , 18
                    office,                    , 18  .

I certify that the foregoing is a correct transcript from the docket of judgments kept in my office.

[SEAL.]                    JESSE JONES, Clerk C. C. P.

The following endorsement appears on the back of said transcript:

283.

## THE STATE OF SOUTH CAROLINA,
### COUNTY OF EDGEFIELD.

JOHN M. CLARK & SONS, *Plaintiffs,*

*Against*

THE SOUTHERN PORCELAIN MANUFACTURING COMPANY, *Defendants.*

### TRANSCRIPT OF JUDGMENT.

J. L. ADDISON,
Plaintiffs' Attorney.

| | |
|---|---:|
| Amount and interest | $6,858 06 |
| Costs and disbursements | 210 77½ |
| | $7,068 83½ |

Filed 9th August, 1876.
Filed 12th August, 1876.

CHARLES EDMONSTON,
C. C. P. & G. S.

All of said endorsement is in the handwriting of J. L. Addison, Esq., except the number of the judgment roll in Aiken County, "283," and the words "filed 12th August, 1876, Charles Edmonston, C. C. P. & G. S.," which are in the handwriting of Charles Edmonston, then Clerk of the Court of Aiken County. Said transcript was docketed in Aiken on said 12th of August, 1876.

II. Summons to make a judgment a lien:

STATE OF SOUTH CAROLINA, ⎱ *In the Court of Common*
COUNTY OF AIKEN. ⎰ *Pleas.*

W. H. HARRISON, Assignee of J. M. CLARK & SONS,
*Plaintiff,*

*Against*

THE SOUTHERN PORCELAIN MANUFACTURING COMPANY, *Defendants.*

### SUMMONS TO MAKE A JUDGMENT A LIEN.

*To the Southern Porcelain Manufacturing Company:*

Whereas judgment was obtained in the Circuit Court for the

County of Edgefield and State of South Carolina, on the 1st day of March, A. D. 1871, in the above entitled cause against the defendants; and whereas the said judgment was docketed in this County on the 9th day of August, 1876,—the said judgment being for $4,955.90, with costs and interests,—and it is desired to make said judgment a lien in accordance with the Act of the General Assembly of the said State, approved the 25th day of November, 1873, and the Acts amendatory thereto:

Now, therefore, you are summoned to appear at the term of the Circuit Court to be held for said County on the second Monday of September, A. D. 1877, and then and there show cause, if any you have, why said judgment should not be revived and become a lien on all the real property of the said judgment debtor in this County according to law.

<div align="right">D. S. HENDERSON,<br>
Plaintiff's Attorney.</div>

Dated 6th August, A. D. 1877.

Said summons was served on T. J. Davies, President of the company, on the 9th day of August, 1877. At the September Term, 1877, Judge Reed passed the following order:

"The within summons having been served on T. J. Davies, President of the Southern Porcelain Manufacturing Company, the defendant, and no appearance having been made in answer to said summons, ordered that the same be filed in the office of the Clerk of the Court of Aiken County, and that the judgment therein mentioned be, and the same is hereby, declared a lien on all of the real property of defendants in this County for ten years.

<div align="right">"J. P. REED.</div>

"September 10th, 1877."

Said summons was filed in his office by the Clerk of the Court of Aiken County, and entered on the abstract of judgments on the 10th of September, A. D. 1877.

III. Execution issued on above transcript, dated 9th August, 1876, marked as received by Sheriff 12th August, 1876.

IV. Renewal execution on said judgment, issued and lodged with Sheriff 7th December, A. D. 1877.

V. The following transcript from Edgefield (which has never been filed in Aiken):

Names of parties against whom judgments have been obtained—Southern Porcelain Manufacturing Company.

Names of parties in whose favor judgments have been obtained—John M. Clark & Sons. Attorney—J. L. Addison.

Damages and Costs—Amount of judgment, $4,955.90. Interest from 7th March, 1871. Attorney's costs, $15.00. Clerk's costs, $5.87. Sheriff's costs, $3.50. Total amount costs and disbursements, $4,980.27.

Filed on the                     day of                     , 18
        Clerk's Office, Edgefield, February 14th, 1878.

I certify that the foregoing is a correct transcript from the docket of judgments kept in my office.

[SEAL.]                              O. F. CHEATHAM, Clerk.

The respondent, M. T. Holley, Sheriff, at the hearing, produced the notice of the attorneys of Addison & Addison warning him not to pay out the money in question to any other judgment than theirs; also the judgment roll in the case of J. L. & H. W. Addison against the Southern Porcelain Manufacturing Company, which showed that their judgment was entered up and docketed on the 4th day of October, 1877, and execution issued same day. It is admitted that this judgment and execution complies with the law in all respects.

The judgment of His Honor the Circuit Judge is as follows:

THOMSON, J.    M. T. Holley, Sheriff of Aiken County, was ruled to show cause why he had not paid the sum of $1,647.28, alleged to be in his hands, to W. H. Harrison, assignee of the above case. He made return in substance that he had been notified by Mr. Croft, attorney for Addison & Addison, judgment creditors of the defendant, that W. H. Harrison claimed under a transcript of a judgment alleged to be irregular and void, and that they (the Addisons) were entitled to the money. The Sheriff called the attention of the Court to these conflicting claims. The funds in his hands arose from the sale of realty. A portion of the money had been paid to older liens without objection, leaving the question of right to the balance in his hands to be determined by the Court.

It was alleged for W. H. Harrison that his judgment had been docketed years before in the Clerk's office at Edgefield; that on the 12th of August, A. D. 1876, a transcript of the judgment was docketed in the office of the Clerk of the Court at Aiken; that the transcript was a lien on the land of defendant from such time, and was entitled to the proceeds of sale accordingly. W. H. Harrison also produced a summons to make the judgment a lien, on which was endorsed the order of Judge Reed, 10th September, A. D. 1877, declaring it a lien for ten years. The judgment of Addison & Addison was docketed in the Clerk's office at Aiken on the 4th of October, A. D. 1877, to which there was no exception.

The validity of the transcript was the question in the case. Section 305 of the Code (Rev. Stat., 640,) provides "that transcript of a final judgment, directing in whole or in part the payment of money, may be docketed with the Clerk of the Court of Common Pleas in any other County, and when so docketed shall have the same force and effect as a judgment of that Court."

To understand what a transcript should contain, it is necessary to ascertain the requisites of a judgment.

The judgment should contain (amongst other things) the title of the case, a general description of the Court, the names of the parties, the term of the Court, how judgment has been obtained, (by default or otherwise,) the relief granted and determination of the action.— 2 Till. and Shearm., 693.

An execution follows the judgment, and on page 642, Rev. Stat., the contents of an execution are set forth: The execution must refer intelligibly to the judgment, stating the Court, the County where the judgment roll is filed, the names of the parties, the amount of the judgment, if it be for money, the amount actually due thereon and the time of docketing in the County to which the execution is issued.—4 Wait's Pr., 16.

An abstract is a less quantity containing the virtue and force of a greater quantity.—2 Barrett, 4. A transcript is generally defined a copy, and is more comprehensive than an abstract.

Tested by the above rules, the transcript in question is deficient in not a few particulars. The term of the Court, the time when judgment was obtained, in what County, the character of the judgment, when docketed or filed, the customary recitals and determination of the cause, are wanting. In the opinion of the Court the transcript is so defective as to create no lien upon the property of

the defendant. It is urged, however, that the power of amendment be exercised by the Court, so that, referring to the record at Edgefield, information may be drawn therefrom and the transcript amended in its defective parts. If the certificate to the transcript be correct, the judgment may be defective, as the certificate does not show when the judgment was docketed or filed at Edgefield.

But the obvious objection to the amendment is, that the rights of third parties have intervened, and no amendment can be allowed which would have the effect of displacing their vested rights.— 4 Wait's Pr., 670; 1 Wait's Dig., p. 82, § 77.

Though such amendment would be allowed between the parties and against the defendant seeking to set the judgment aside.— 1 Wait's Dig., p. 83, § 78; *McKee* vs. *Tyson*, 10 Abb., 392.

Nor is W. H. Harrison aided by the summons to make the transcript a lien. The A. A. 1874–75, p. 891, provides "that no judgment shall constitute a lien, etc., unless a transcript thereof is lodged in the office of the Clerk of the Court of Common Pleas of the County where the property of the judgment debtor may be situate." Such transcript means a valid, legal one; and the summons to make the judgment a lien being based upon it must fall with the defective transcript.

It is adjudged and ordered that the rule against Sheriff Holley in the case aforesaid be dismissed. That Sheriff Holley apply the money in his hands arising from sales of the property of defendant in payment of costs of this rule, and then to the satisfaction of the judgment of Addison & Addison, if so much be in his hands.

That leave to amend the transcript is granted, and upon amendment made it shall have effect *nunc pro tunc* as between the assignee Harrison and the Porcelain Manufacturing Company.

W. H. Harrison, assignee, excepted to the foregoing decree, and appealed therefrom on the following grounds:

1st. That His Honor erred in holding that the transcript from Edgefield, filed in the Clerk's office at Aiken on the 12th of August, 1876, was so defective as not to create a lien on the defendant's property.

2d. That His Honor erred in not allowing said transcript, if defective, to be amended as against the claims of Addison & Addison.

3d. That His Honor erred in dismissing the rule.

4th. That His Honor erred in not ordering the respondent to pay the money to the judgment of the appellant.

*Henderson,* for appellant:

The first question for the attention of the Court is the finding of the Circuit Judge that the transcript of the Clark judgment (assigned to the appellant, and which was docketed in the Clerk's office at Aiken on the 12th of August, 1876,) "is so defective as to create no lien upon the property of the defendants." It is submitted that said finding is erroneous. The Circuit Judge seems not to regard the paper submitted as *no* transcript, but as a *defective* transcript,—so "defective" as not to create a lien. The whole paper, its face and endorsement, should be construed together as a whole. Its endorsement shows that it is from Edgefield County, and that it is a judgment; its face shows the names of the *judgment* debtors and creditors, and the amount of judgment, and the time from which the judgment draws interest (which must be presumed to be its date); that the case has been to the Supreme Court, and that the judgment is filed in the office of the Clerk who signs it. The letters "C. C. P." to the name of the Clerk shows the Court, and the seal shows the County. True, there is no date (by inadvertence) to the certificate, but the date of docketing and filing in Aiken County, on the 12th of August, 1876, in the handwriting of the Clerk of the Court of Common Pleas for Aiken County, shows that the paper was in existence long before the rendition of the Addison judgment and properly filed in Aiken.

It was contended by respondent's counsel, at the hearing below, that the paper was not a "transcript of a final judgment," within the meaning of Section 305 of the Code, and that a "transcript of a judgment" means a copy of the judgment; and the corresponding Section of the New York Code (Section 282) was referred to as showing that a wrong practice has sprung up in this State by taking, in pursuance with said Section, a "transcript of the docket" of judgments instead of a transcript of the judgment. We are relieved from here repeating our argument that the paper in its outline is fully a transcript of a judgment in the meaning and intent of Section 305 of our Code by the finding of the Judge that it is a defective transcript.

We could hardly imagine that a form which has been sanctioned by a practice throughout the State for nearly ten years, and by

the use of which the titles to so much land has been effected, could be assailed by such a technical construction of a statute which, if it means anything, clearly and in all legal contemplation only *directs* a mode of giving notice of the existence of a judgment.

How, then, should the paper in question be construed in order to ascertain its efficacy or deficiency? It is submitted we should look more to the substance than the form. Section 268 of our Code (the same words being used in the New York and California Codes) defines "a judgment [as] the final determination of the rights of the parties in the action." In Freeman on Judgments, (2d ed.,) Section 47, we find: "Whatever may have been requisite formerly, it is evident that the sufficiency of the writing claimed to be a judgment must, at least under the Code, be tested by its substance rather than its form. If it corresponds with the definition of a judgment as established by the Code—if it appears to have been *intended* by some competent tribunal as the determination of the rights of the parties to an action, and shows in intelligible language the relief granted—its claim to confidence will not be lessened by a want of technical form, nor by the absence of language commonly deemed especially appropriate to formal judicial records. The entry of a judgment, like every other composition, should be comprised of those words which will express the idea intended to be conveyed with the utmost accuracy. It should also be a model of brevity, and contain no unnecessary directions."—Same authorities, §§ 50, 51.

The Court is especially referred to the very conclusive cases of *Sears* vs. *Burnham*, 17 N. Y., (3 Smith,) 445, and *Fish* vs. *Emerson*, 44 N. Y., (5 Hand,) 376. Upon these authorities we confidently submit that the paper in question is not "so defective as to create no lien on the property of the defendants," especially as against the Addisons, who had notice of its existence. They, copartners in business, resident attorneys at Edgefield, and one of them the attorney of Clark & Sons, and he actually having transferred said transcript to Aiken County, as appears by his endorsement in writing upon its back.

The Circuit Judge erred in finding that the appellant is not "aided by the summons to make the *transcript* a lien."

(*a*) The summons was not "to make the *transcript* a lien," but, as shown on its face, "to make [a] the *judgment* a lien."

The summons recited the judgment as being obtained at Edgefield, in the Circuit Court, on the 1st of March, 1871, and specified the names of the parties and the amount, and that the said judgment had been docketed in Aiken County. The question at issue, then, between the parties to that summons was the validity of that judgment. If the transcript was necessary to the creation of the lien under the Act of 1874–75, p. 891, or if its defectiveness was a defense to said creation, the company defendant should have made it; but, to the contrary, they made default, and on the 10th of September, A. D. 1877, before the Addison judgment was obtained or entered, Judge Reed passed, in open Court, a solemn order declaring said judgment a lien for ten years, said order being based upon facts which embraced not only the transcript but the judgment itself.

(b) The judgment in question, having been obtained before the amendment to the Code in question, was not a lien on the lands of the defendants until a levy was made and certain acts done in the Clerk's office. The judgment was obtained in Edgefield County, where the defendant corporation resided, and where their land was then situate; afterwards, to wit, in October, 1872, Aiken County was formed, and the property of the defendants and their residence became in Aiken County. Hence the summons had to issue from the Common Pleas of Aiken, and the case on the summons was tried and determined in Aiken.

Suppose that Clark & Sons had not sued defendants until Aiken was formed, yet if judgment had been obtained before the Addisons', no question of priority could be raised. What is the difference in the case raised on the summons? Certainly no one would doubt but that the Common Pleas of Aiken could exercise jurisdiction to revive a judgment obtained in Edgefield when the land to be affected by the judgment was in Aiken.

(c) There is a strong distinction between "another" County and the "new" County, which contains a part of the County where the original judgment was obtained. Whatever rights were held or existed on the defendants' property were not divested by the placing of that part of the County in a new County.

"The erection of a new County subsequently to the docketing of the judgment, including in its limits the land of the debtor, does not release or otherwise affect the lien."—Freeman on Judgments, § 385.

(*d*) For all intents and purposes the proceedings had under the summons to make the judgment a lien was a case and trial between the parties to it, and Judge Reed's order adjudicated the facts raised in the summons. .

His order was *final*, and cannot be treated as a nullity, especially in a collateral way. ·

Were there oppression, or fraud even, as between the parties to the action, unless said fraud was for the purpose of delaying, defeating or hindering creditors, other creditors cannot complain— they are estopped.—*Peters* vs. *Smith*, 4 Rich. Eq., 203; *Picket* vs. *Picket*, 2 Hill Ch., 471.

Even admitting that " the transcript is so defective as to create no lien on the property of the defendants," and that the alleged defect therein has not been cured by the order of Judge Reed on the "summons to make the judgment a lien," we submit that the Circuit Judge erred in not allowing the transcript to be amended as against the claim of Addison & Addison.

He admits the ample authority given under the Code to amend a judgment, "after trial" as between the parties, by his leave to amend, but alleges that no amendment can be allowed which will interfere with the rights of *third* parties intervening. The question is, what third parties are intended? and the authorities say not junior judgment creditors with notice, but *bona fide* purchasers. We are in a Court of equity, and strict law should give way to equity. .

" Where a judgment had been actually vacated, but the order vacating it was subsequently set aside, the original lien of the creditor was restored and enforced as against junior judgment creditors, no equities in favor of *bona fide* purchasers or encumbrances having intervened."—*King* vs. *Harris*, 30 Barb., 471; *Geller* vs. *Hoyt*, 7 How., 265.

In *Hunt* vs. *Grant* (19 Wend., 90,) a docket of a judgment was amended *nunc pro tunc* by increasing the amount from $3,000 to $30,000. Numerous judgments had been recovered against the defendants after that in question had been docketed, but by the amendment the plaintiff obtained a preference over them all. The Court, by Brunson, J., say: " If the three creditors who appear had given credit or granted indulgence to the defendants, if they had omitted any diligence in attempting to secure their debts, or had in any other way acted on the supposition that the plaintiff's

judgment was no more than $3,000, it would be proper to protect them from an unrestricted amendment of the docket, but nothing of the kind is alleged; * * * * they rely wholly on the fact * * * that they have subsequent judgments, and, consequently, may be affected by correcting the docket."

Did the Addisons ever act on the faith of Clark & Sons having no lien? Certainly not. They knew of it, and one took part in obtaining it. And to them may be said: "No man can take advantage of his own wrong."

To the same effect are the cases of *Hart* vs. *Reynolds*, to be found in a note in *Chichester* vs. *Cande*, 3 Cowen, 39; *Man* vs. *Brooks*, 7 How., 449; also Freeman on Judgments, §§ 66, 67, 71.

*Aldrich, Croft,* contra:

The questions before the Court may be briefly stated thus:

1. Is the paper termed in these proceedings "the transcript from Edgefield" in law a transcript of judgment?

2. If it is, is it not fatally defective?

3. Can it be amended?

4. Does Judge Reed's order of 10th September, 1877, aid it?

5. Is not the Circuit Judge's order correct?

Let us refer to the law of this State as to transcript of judgment, next the law of New York, and then note the difference:

"A transcript of a final judgment, directing, in whole or in part, the payment of money, may be docketed with the Clerk of the Court of Common Pleas in any other County, and when so docketed shall have the same force and effect as a judgment of that Court."—Code, § 305, subdiv. 2; Rev. Stat., p. 640.

"Upon filing a judgment roll upon a judgment, directing, in whole or in part, the payment of money, it may be docketed with the Clerk of the County where the judgment roll was filed, and in any other County upon the filing of the Clerk thereof a transcript of the original 'docket,' and shall be a lien on the real property in the County where the same is docketed."—New York Code, § 282.

Our Act uses the expression "a transcript of a final judgment;" that of New York says "a transcript of the original 'docket.'"

The two Codes are similar (ours being a transcript of the New York Code) for many Sections just preceding the passages quoted; but when we reach the subject of transcripts of judgment, the

framers of our Code expressed their intentions in a single sentence of four lines and rejected the provisions of the New York Code, which cover an entire page.

Our Code is founded upon that of New York. Generally it is an exact copy, and the annotated Codes of New York are, as a matter of convenience, almost exclusively used. Our legal forms are, as a rule, imported whole and intact from New York. Perhaps the true solution of the question before this Court is that this difference in the two Codes has escaped the notice of the profession.

"A judgment is the final determination of the rights of the parties in the action."—Code, § 268; Rev. Stat., p. 630; New York Code, § 245.

"Unless the party or his attorney shall furnish a judgment roll, the Clerk, immediately after entering the judgment," shall make up the judgment roll, and that roll must in all cases include "a copy of the judgment."—Code, § 305; Rev. Stat., p. 640; New York Code, § 281.

This paper called the "transcript of judgment from Edgefield" does not state how it was obtained, whether on failure of defendant to answer, on a verdict, or report of Referee, by confession, or for want of a reply to an answer. The Code provides a form of judgment in each of the above cases, and it is a transcript of the New York Code in every instance.

Again, it is the duty of the Clerk "to sign officially all judgments and state the time when each is signed and entered."

There is nothing in the "transcript of judgment from Edgefield" as to its being signed or entered by the Clerk or any one else.

Section 288 of the Code says the Clerk shall make an entry in his minutes, specifying * * "the verdict, and either the judgment rendered thereon," &c.

That is wanting here. What was the judgment?

Just here it is well to note that the word "docket" is used in our Code, also in that of New York.

Section 10, subdiv. 5, Rev. Stat., p. 177, provides for a "docket." After enumerating the various kinds, it says: "No cause shall be entered on the docket except by the Clerk or his deputy, nor by him until the pleadings are made up. The dockets for the Court shall be regularly preserved as a record of the Court, and shall show, in separate columns, the number of cause, number of term, names of parties, cause of action, plaintiff's attorney, defendant's

attorney, (and, in the Sessions, prosecutor's name,) order of the last Court, and place for the event of suit, to be entered by the Judge."

Suppose the New York law to exist here,—would this "transcript from Edgefield" be "a transcript of the 'docket'"? A docket is one of the records of the Court. But what does the present "transcript" say as to the "number of term," "cause of action," "order of the last Court," and what has the Judge entered in the "place" reserved for him to enter the "event of suit"? The "transcript" is silent, meaningless and a nullity.

We cannot expect to find much authority on this subject, as our Code, so far as it refers to the subject under discussion, is new. That refers to "transcripts of judgment." The New York authorities are not in point, because they refer to "transcripts of dockets," separate and clearly-defined subjects.

Before leaving the subject of dockets, I would call to the attention of the Court two matters of which it will take notice: That for a docket to be such it must be that of some Court. The "transcript" from Edgefield does not say of what Court's docket it is a transcript, whether the Court of Common Pleas, Probate Court, or that of a Trial Justice. We can guess that it is not taken from the Sessions docket—if guessing can aid a record: If we are satisfied that our Code means what it says, "a transcript of final judgment," our next inquiry is, what is a transcript?

We maintain that it means a *copy*—nothing more, nothing less; just as we use in Court a copy of the former judgment when such is pleaded as an estoppel, or the certified copy of the lost deed, and not an abstract. Transcript, exemplification and copy are synonymous terms; any dictionary will show this.

Transcript.—"That which has been transcribed; a writing made from and according to an original; a writing or composition consisting of the same words with the original; a written copy."—Webster's Dictionary.

It is derived from the Latin, is a compound word, made up of *trans*, across, over, and *scribere*, to write.

Exemplification.—"That which exemplifies; a copy; a transcript; an attested copy or transcript, under seal, of a record." It is taken from the Latin *exemplum*, example, and *facere*, to make.—Webster's Dictionary.

Copy.—"A pattern for writing; transcript."—Webster's Dictionary.

"Transcript is a copy of any original writing or deed, &c., where it is written over again or exemplified."—5 Tomlinson's Law Dictionary, 631; 2 Bouvier's Law Dictionary, 605.

The word was used in 34th and 35th Henry VIII, Chap. 14, (now repealed,) and ever since it has been in legal phraseology used to denote a copy. In fact, it seems to have been used in that sense from the beginning of language.

If, then, a transcript is a certified copy of a judgment, our next inquiry is, what are the essentials of a judgment, without which it cannot exist, and is "the transcript of judgment from Edgefield" wanting in any essential particulars, and what?

We have seen that the Clerk must sign all judgments, stating the time when it was signed and where entered, also that the present "transcript" is wanting in these particulars.

"The complaint shall contain the title of the cause, specifying the name of the Court in which the action is brought, the name of the County in which the plaintiff desires the trial to be had," [this latter clause is changed by recent legislation, but the change has no bearing on the question,] "and the names of the parties to the action—plaintiff and defendant."

"A plain and concise statement of the facts constituting a cause of action."—Code, § 165; Rev. Stat., 604.

"A judgment is the decision or sentence of the law, given by a Court of justice or other competent tribunal, as the result of proceedings instituted therein."—1 Bouv. Inst., p. 264, § 676.

The complaint is the basis upon which the judgment rests, and the execution is the result of the judgment; it must refer to the judgment, and its validity consists in the truth of the recitals. The execution must be directed to the Sheriff, * * * attested by the Clerk, * * * and must intelligibly refer to the judgment, stating the Court, the County where the judgment roll or transcript is filed, the names of the parties, the amount of the judgment, if it be for money, and the amount actually due thereon, and the time of docketing to which the execution is issued.—Code, § 312; Rev. Stat., p. 642.

This "transcript" does not state "the name of the Court in which the action is brought," the "name of the County;" it does

not even give the name of the State; it does not recite "a plain and concise statement of the facts constituting a cause of action," &c.

A judgment to be valid must be rendered by a Court of competent jurisdiction, but we must know the name of the Court to ascertain its jurisdiction. The venue must be stated; here it is wanting. Without knowing the venue we cannot ascertain the jurisdiction, as every Court in this State, except the Supreme Court, depends upon territorial limits for its jurisdiction. I need not refer to the statutes on this subject—they are too familiar.

Then our "transcript from Edgefield" was obtained in an unknown Court, an unknown State, an unknown County—I should say a nameless Court, State and County, for neither are stated. But, worse still, the judgment is not given, for in the transcript we find no copy of a judgment, not even a Judge's name, not even a date.

I will not discuss the question whether or not this "transcript" created a lien on defendants' property; for if it fails as a judgment, its lien, which is the consequence of the judgment, being a part, an element, of the whole, falls with it.

Does Judge Reed's order of September 10th, 1877, aid the defective judgment?

When the Harrison judgment was obtained, according to the recitals in the summons to make the Harrison judgment a lien on real estate, it did not constitute such a lien. A judgment did not then bind real estate, save when execution was duly issued. It was obtained under Section 313 of the Code, now repealed. The summons to make it a lien was issued under and in pursuance of Section 14, to be found on page 498, 15 Statutes at Large, which provides * * "and in cases where judgments have been obtained since the 1st day of March, A. D. 1870, a like lien may be obtained by the service of a summons upon the judgment debtor * * to show cause, if any he or they may have, why said judgment should not be and become a lien in accordance with provisions of this Act; and if no sufficient cause be shown to the contrary, said judgment shall be and become a lien on all the real property of the judgment debtor in the County where entered," &c.

The object of this amendment was two-fold: First, to make future judgments a lien on real estate in the County where entered; and, second, to provide a means by which those judgments obtained between the date of the adoption of the Code and the passage of

the amendment might be placed upon an equality. The only difference was that the one constituted a lien upon real estate, while the other did not. The amendment provides that a summons shall issue upon what? The judgment. And for what purpose? For the defendant to show cause why "said judgment" [the one already obtained under the prior law] should not become a lien in accordance with the provisions of the amendment. If no sufficient cause is shown to the contrary "said judgment" shall be and become a lien, &c. These proceedings under the amendment presuppose an old judgment; they apply to that only. Their object is not to make a new judgment, but only to add a new element to the old judgment, to wit, to make it a lien upon real estate. Now, if the judgment never existed, or was a nullity, then no new element could be added to it. Recording a deed is prescribed by law, yet no one would say that recording would make a defective deed valid. So with a mortgage. The object of recording the mortgage and the service of summons under the amendment is, in many respects, to accomplish similar ends—to make their lien legal and valid. Therefore the proceedings by summons under the amendment were nugatory, for we have shown that the "transcript from Edgefield," being invalid, would not support the proceedings.

As to the amendments sought, they cannot be granted for three reasons :

1. It does not appear that a proper motion to amend was made; such a motion should state in what particular the amendment is sought. A general motion to amend anything and everything is no motion at all. It is too uncertain, and the Court will pass it without consideration. "An order granting leave to amend generally, without stating in what particular, is, it seems, irregular."— *Thompson* vs. *Malone*, 13 Rich., 252.

2. Because to amend a record there must be something on the face of the record to amend by. The face of the record should show the mistake, and also show how that mistake may be corrected. Here the record shows no Court. How will this Court undertake to say it was obtained in any Court at all, and which? The same may be said in regard to the State, County, date, cause of action, nature of judgment, &c. What appears upon the record by which we can make these numerous amendments?—*Thompson* vs. *Malone*, 13 Rich., 252; *Brown* vs. *Hillegas*, 2 Hill, 448; *Bank* vs. *Condy*, 1 Hill, 209.

"Process which does not contain the name of any Court is not amendable."—*Ward* vs. *Stringham*, 1 Code R., 118; *Anonymous*, 1 Code R., 75.

The transcript when filed constitutes the judgment; it is a judgment in itself, and has no connection with any other.—R. S., 640; 15 Stat., 498.

3. An amendment will not be allowed when its effect will be to prejudice the rights of third parties. As between the parties to the record, an amendment, *nunc pro tunc*, may be granted when it does not interfere with the vested rights of third parties. Here, then, is no question as to the regularity and validity of the Addison judgment, and if the Harrison judgment is amended the effect will be either to divest the Addison judgment of its vested lien or to make it a second lien. Practically it will take the money from the Addisons, who are in no default, and give it to Harrison, whose proceedings are defective in every particular.—*Gough* vs. *Walker*, 1 Nott & McC., 479; *Galpin* vs. *Fishburne*, 3 McC., 22.

There is another view of this question of amendment which we think precludes appellant's right to amend. This is a motion, or ought to be.—Code, § 417. It should be in writing, and notice should have been served on the defendant.—Code, § 418. The Southern Porcelain Company ought to be a party to this motion to amend.

November 20, 1878. The opinion of the Court was delivered by

HASKELL, A. J. As stated in the Court below, "the validity of the transcript [of judgment] was the question in the case," and the Circuit Judge decides that "the transcript" is so defective as to create no lien.

The decision rests upon the legal presumption that the transcript lodged cannot be a copy of a judgment, for it does not contain the requisites of a judgment; or upon this: that if the transcript be correct, the judgment is defective and constitutes no lien. There is attached to the "transcript" a certificate "that the foregoing is a correct transcript from the docket of judgments kept in my office.

"[SEAL.]                          JESSE JONES,
                                        "C. C. C. P."

And no evidence was produced to show that the certificate was erroneous. Can it be said that there is error upon the face of the

transcript? A judgment is defined to be "the final determination of the rights of the parties in the action."—Rev. Stat., 630, § 268. It must be signed officially by the Clerk.—Rev. Stat., 181.

There may be several separate and distinct judgments in the same case determining the rights of the several parties. Judgments on verdicts and on the findings of fact by the Court are subject to the same rule, as also judgments where there are only questions of law. The law of "judgments," in cases of trial by jury, therefore, has, of necessity, been changed, and we find that the Act of 1839 has undergone important modifications.—Rev. Stat., 173, 184. The provisions on the subject in the Code evidently design the adoption of the method formerly pursued in the Courts of equity, and in place of the book of decrees has adopted for cases in law as well as in equity (the distinction in name having been abolished) a "judgment book." Rev. Stat., p. 640, § 303: "The Clerk shall keep *among the records of the Court* a book for the entry of judgments, to be called the judgment book." Section 304: "The judgment shall be entered in the judgment book, and shall specify clearly the relief granted, or other determination of the action."

It is obvious, on examination of the whole system, that the change is radical, and that the formalities of the *postea* have been done away with, and the record of the judgment is no longer, as formerly, in the judgment roll, but in the "judgment book," which, by Section 303, is made a book of record. That the judgment roll is not the best evidence of a judgment is clear from Section 305, p. 640, Revised Statutes, which defines the judgment roll as consisting of, in some cases, copies of the pleadings, in other cases the original pleadings; but in all cases, in addition to the pleadings, or copies thereof, there must be attached, not the judgment, but a "*copy* of the judgment." We are then to look for what constitutes a judgment, first, to the statutes which have introduced this new procedure. We have already cited the definition of a judgment and what the Clerk is commanded to enter in the judgment book. If the judgment, thus entered, specifies clearly the "relief granted, or other determination of the action," it is sufficient in law.

The transcript before us stated the names of the parties against whom the judgment has been obtained; the names of parties in whose favor judgment has been obtained; the amount of the judgment that it was for; damages and costs; the items of costs and disbursements, and the day from which interest on the judgment

begins to run. And it is followed by a certificate, signed and sealed, by "Jesse Jones, C. C. C. P.," "that the foregoing is a correct transcript from the docket of judgments kept in my office." Jesse Jones, C. C. C. P., is a public officer, and, as such, is known, and his identity is not disputed; he is an officer in the County of Edgefield, and the words "in my office" are equivalent to "the office of the Clerk of the Circuit Court for the County of Edgefield," for by statute (Rev. Stat., 504, § 3,) the Clerk of the Court must have a seal, and "each seal shall, in the legend, have the name of the Court in which it is used." The decision seems also to assume that "docket of judgments" means "abstract of judgments." There is a book called "abstract of judgments," and if the Clerk meant to designate that book he should have used the proper title. So, it may be said, on the other hand, he should have used the name "judgment book." But neither in law nor justice should an innocent party be made to suffer by the carelessness of another if it can be remedied. The first meaning attached to the word "docket" is a formal record of judicial proceedings.—Bouv. Law Dic. As a secondary meaning, the same authority says: "Docket is also said to be a brief writing, on a small piece of paper or parchment, containing the substance of a larger writing." The first meaning will effect justice, for about the justice of the case, the law being equal, there can be no question, while the latter will impose hardship. There being no evidence to the contrary, "docket," &c., may then be taken to mean "the formal record" of the judgments, and that is contained in the judgment book. If it were necessary, there might be doubt whether the opposing creditors, who are joint plaintiffs, are not estopped from interfering with the priority of the appellant's judgment, for one of them certainly had notice, and, as attorney for the appellant, procured the transcript now in question, and has endorsed upon it the statements, in lack of which the transcript is charged with being defective. But that will not be considered.

As already indicated, we cannot perceive that it must in law be presumed that the transcript is not a copy of the judgment, and are of opinion that, there being no evidence to the contrary, the certificate of the Clerk must be received as true, and that the "docket of judgments" may be taken as designating the "judgment book." It is true that the transcript does not contain the signature of the Clerk of the Court, but that is not the judgment,—

it is merely the official evidence,—and that must be presumed. We regard the body of the judgment, certified by the same seal as stamped the original judgment, to be sufficient. The other question, perhaps, does not properly arise, but it is intimated in the decision that if the transcript be correct the original is no judgment. The views already expressed dispose of that objection, except, perhaps, with regard to the absence of date of entry of the judgment. The certificate of the Clerk, Jesse Jones, bears no date upon its face, but we think the statement of the date from which the interest runs on the judgment might be taken to designate the term of the Court at which judgment was obtained, while the date of the filing of the transcript in the office of the Clerk of the Court at Aiken is the only date which affects the rights of judgment creditors and the defendants' property in that County, under the amendatory Act of 1873, (page 499,) which is the Act on which the case must stand. Taking the transcript, then, to be correct, it is of the same force as the original. Let it be said that the original judgment is defective in form:—under the powers conferred by the Code such defect can be cured by the Court.—§§ 196, 199. The transcript being of the same force and effect as a judgment of that Court where it is filed, (§ 305 of the Code,) the motion to amend or cure the defect may be made on the transcript as well as on the original. Summons was served on the defendants in this case, reciting the judgment, and when and where obtained, and when docketed in Aiken, and reciting the Act of 1873, and calling upon the defendants to show cause "why the said judgment should not be revived and become a lien on all the real property," &c. No appearance having been made by the defendants, the order bearing date September 10th, 1877, was made by the Circuit Judge, whereby the judgment was declared a lien. The judgment held by the creditors who claim precedence bears date subsequent to this order. After that order there was a subsisting judgment between the parties in the Court in Aiken having a lien upon the real property of the defendants in that County, and it could be assailed only upon such grounds as would have availed had it originally been entered in proper manner in that County.

The judgment of the Circuit Judge is reversed and the cause remanded for such further proceedings as may be necessary.

Motion granted.

*Willard*, C. J., and *McIver*, A. J., concurred.